UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DEAN OWEN PITTENGER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:17-cv-230 ) |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Dean Owen Pittenger, on May 24, 2017. For the following reasons, the decision of Commissioner is **REMANDED.**

*Background*

The plaintiff, Dean Owen Pittenger, filed an application for Disability Insurance Benefits on November 18, 2013, alleging a disability onset date of August 31, 2009. (Tr. 24). The Disability Determination Bureau denied Pittenger's application on February 21, 2014, and again upon reconsideration on June 26, 2014. (Tr. 24). Pittenger subsequently filed a timely request for a hearing on August 27, 2014. (Tr. 24). A video hearing was held on April 7, 2016, before Administrative Law Judge (ALJ) Shane McGovern, and the ALJ issued an unfavorable decision on May 4, 2016. (Tr. 24-33). Vocational Expert (VE) Carrie E. Anderson appeared and testified by telephone at the hearing. (Tr. 24). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Pittenger also filed an application for Supplemental Security Income on November 18, 2013. (Tr. 24). In an initial determination, Pittenger was found disabled as of February 12, 2014. (Tr. 24). The ALJ concurred with the determination and concluded that Pittenger is disabled under §1614(a)(3)(A) of the Social Security Act as of February 12, 2014. (Tr. 24).

Pittenger last met the insured status requirements of the Social Security Act on September 30, 2013. (Tr. 26). On May 4, 2016, the ALJ issued an unfavorable decision and made findings as to each of the steps in the five-step sequential analysis. (Tr. 24-33). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Pittenger had not engaged in substantial gainful activity during the period from his alleged onset date of August 31, 2009 through his date last insured of September 30, 2013. (Tr. 26).

At step two, the ALJ determined that through the date last insured Pittenger had the following severe impairments: hypertensive cardiovascular disease, hypertension, obesity, lumbar spine spurring, sleep apnea, and asthma. (Tr. 26). Pittenger reported that he had four bleeding ulcers as of July of 2014, but the impairment was diagnosed and treated after the date last insured. (Tr. 26). At the hearing, Pittenger testified to numerous other medical complaints including blindness in his left eye; hearing loss; three herniated discs; arthritis in his knee, hands, and hip; and severe neck problems. (Tr. 27). The ALJ indicated that the existence of a medically determinable physical or mental impairment cannot be established without objective medical abnormalities. (Tr. 27). The ALJ concluded that the above complaints were not supported by objective medical evidence and therefore were not medically determinable. (Tr. 27). After the date last insured, Pittenger attended a mental status evaluation with Irene M. Walters, Psy.D., on February 4, 2014. (Tr. 27). The ALJ determined that there was no evidence

of a mental impairment prior to the date last insured and that after the date last insured the evidence only established mild limitations. (Tr. 27).

At step three, the ALJ concluded that Pittenger did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27). The ALJ indicated that the medical evidence did not document listing-level severity. (Tr. 27). Moreover, the ALJ found that no acceptable medical source had mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination, specifically Listings 1.02, 3.02, 3.03, 3.10, and 4.04. (Tr. 28). The ALJ also considered Pittenger's obesity in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings, as required. (Tr. 28).

After careful consideration of the entire record, the ALJ then assessed Pittenger's residual functional capacity (RFC), through the date last insured, as follows:

> [T]he claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 4 hours of an 8 hour workday, and sit for a total of about 6 hours in an 8 hour workday. The claimant was able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he was unable to climb ladders, ropes, or scaffolds. The claimant needed to avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation, and hazards.

(Tr. 28). The ALJ explained that in considering Pittenger's symptoms he followed a two-step process. (Tr. 28). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Pittenger's pain or other symptoms. (Tr. 28). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Pittenger's functioning. (Tr. 28).

The ALJ determined that Pittenger's medically determinable impairments reasonably could have been expected to cause some of the alleged symptoms. (Tr. 29). However, Pittenger's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 29).

At step four, the ALJ found that through the date last insured Pittenger was unable to perform any past relevant work. (Tr. 31). Pittenger was born on February 12, 1964 and was 49 years old, which was defined as a younger individual age 45-49 on the date last insured. (Tr. 31). The ALJ considered whether the instant matter justified applying the age-categories non-mechanically, but he found that any additional vocational adversities were fully considered by the medical-vocational rules. (Tr. 31). The ALJ noted that Pittenger had at least a high school education and was able to communicate in English. (Tr. 31). The ALJ did not account for the transferability of job skills to determine disability because the medical-vocational rules supported a finding that the Pittenger was not disabled. (Tr. 31).

Considering Pittenger's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including system surveillance monitor (98,600 jobs nationally), order clerk (109,200 jobs nationally), and sorter (102,400 jobs nationally reduced by 20 percent). (Tr. 32). The ALJ found that Pittenger had not been under a disability, as defined in the Social Security Act, at any time from August 31, 2009 through September 30, 2013. (Tr. 32).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of

Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); see *Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or

mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f)**.

Pittenger has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand for additional proceedings. In his appeal, Pittenger has argued that: (1) the ALJ's analysis of his subjective symptoms was legally insufficient; and (2) the ALJ erred by mechanically applying the age categories in a borderline situation.

First, Pittenger has argued that the ALJ's analysis of his subjective symptoms was legally insufficient. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). The Seventh Circuit has clarified that the "patently wrong" standard as it applies to the evaluation of symptoms means that the decision lacks explanation or support. **Cullinan v. Berryhill**, 878 F.3d 598, 603 (7th Cir.

6

2017). An ALJ must support his evaluation with specific reasons that are based on the record. ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013).

The SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility." The Social Security Administration clarified that Social Security Ruling 16-3p only applies when the ALJs "make determinations and decisions on or after March 28, 2016" and that Social Security Ruling 96-7p governs cases decided before that date. *See* Notices, SSR 16-3p, 2017 WL 4790249 (Oct. 25, 2017).

Under SSR 16-3, the ALJ must first determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

7

(1) The individual's daily activities;

(2) Location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;

(6) Other measures taken to relieve pain or other symptoms;

(7) Other factors concerning functional limitations due to pain or other symptoms.

**20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).**

The ALJ determined that Pittenger's medically determinable impairments reasonably could have been expected to cause some of the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 28). The ALJ has failed to offer any additional reasoning for discounting Pittenger's subjective complaints, other than the symptoms were not supported by any objective medical evidence. The Seventh Circuit has made it abundantly clear that disability determinations cannot be based entirely on the results of medical tests. ***Adaire v. Colvin*,** 778 F.3d 685, 688 (7th Cir. 2015).

Specifically, Pittenger has argued that the ALJ did not evaluate evidence regarding his activities of daily living or the effects of his prescribed medication in violation of SSR 16-3p and 20 C.F.R. § 404.1529. As for his activities of daily living, Pittenger testified that he was unable to drive for longer than 10 to 15 minutes because he had trouble staying awake; he only slept a few hours a night due to his sleep apnea; he had trouble using public restrooms; he had to change positions frequently to alleviate his pain; and he had discomfort making his bed in the morning, which required him to take breaks. (Tr. 49, 61-62, 63-64, 67). The ALJ's decision mentioned

Pittenger's daily living activities briefly, however, it was in his discussion that Pittenger did not suffer from any medically determinable mental impairments. (Tr. 27).

The ALJ's decision must provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p, 2016 WL 1119029, at *9. The ALJ is permitted to consider whether a claimant's activities of daily living indicate that he can do more than alleged. *See* **20 C.F.R. § 404.1529(c)(3)(i).** However, in the instant matter, the ALJ did not articulate any indication of how he evaluated or considered that Pittenger's daily living activities when evaluating his subjective complaints. Moreover, the ALJ has not provided support for his finding that Pittenger could sustain employment by failing to discuss how Pittenger's daily activities reflected that he was capable of engaging in work eight hours a day for five consecutive days a week. *See* **Carradine v. Barnhart**, 360 F.3d 751, 755 (7th Cir. 2004)

The ALJ also failed to account for Pittenger's complaints of fatigue due to taking Norco. Pittenger testified that the side effects of taking Norco included tiredness and dizziness. (Tr. 56). Side effects of medication are to be considered when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *7. The court is unaware if the ALJ considered Pittenger's alleged side effects in his subjective symptom analysis, and if the ALJ accounted for the impact it had on Pittenger's ability to work. Courts in the Seventh Circuit have remanded for such an omission. *See, e.g.*, **Cosby v. Berryhill,** No. 16 C 11504, 2017 WL 4237048, at *4 (N.D. Ill. Sept. 25, 2017) (remanding where ALJ was required to—but did not—consider the reported side effects of claimant's medications). An ALJ still must discuss and consider the claimant's subjective statements regarding medications side

9

effects, even if he were to ultimately decide that they undercut the claimant's credibility. *Miles v. Berryhill,* 2018 WL 3608557, at *3 (N.D. Ill. 2018).

In sum, the ALJ may not discount Pittenger's symptom testimony solely on the basis of objective medical evidence. The ALJ failed to adequately articulate his consideration of the relevant factors under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Moreover, the sparse examination of a claimant's testimony hinders the court's ability to engage in a meaningful review of the ALJ's decision. *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011). Therefore, the court finds that remand is necessary for further evaluation of Pittenger's symptom allegations in accordance with SSR 16-3p.

Pittenger also made a brief argument that the ALJ considered his impairments "seriatim." Pittenger contends that the ALJ erred by not considering the combination of his impairments, which ultimately could have imposed greater restrictions than his impairments taken singly. At the conclusion of citing the medical evidence as it related to Pittenger's cardiovascular impairments, low back complaints, respiratory impairments, sleep apnea, and obesity, the ALJ addressed the work-related functional limitations produced by each individual impairment. The ALJ indicated at step three that he considered Pittenger's impairment or combination of impairments to determine if they met of medically equaled the severity of one of the listed impairments. (Tr. 28-29). However, in crafting the RFC, the ALJ did not address Pittenger's impairments in combination, and therefore failed to build a logical bridge from the evidence to his conclusion. Without any evidence that the ALJ considered the impairments in concert, the court cannot say that the ALJ built the required "accurate and logical bridge" between the evidence and his conclusion. *Thomas v. Colvin,* 745 F.3d 802, 807 (7th Cir. 2014). On remand,

the ALJ will have the opportunity to consider Pittenger's impairments, singly and in combination, in accordance with SSR 96-8p.

Next, Pittenger has argued that the ALJ erred by mechanically applying the age categories in a borderline situation. The Medical-Vocational Guidelines, or grid, is a chart that classifies a claimant as disabled or not disabled based on the claimant's physical capacity, age, education, and work experience. ***Walker v. Bowen***, 834 F.2d 635, 640 (7th Cir. 1987); *see* **20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(a)** ("Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."). The age classification is split into three separate categories: younger person—under age 50, person closely approaching advanced age—age 50-54, and advanced age—age 55 or older. **20 C.F.R. § 404.1563(c)–(e)**. A younger person generally is not considered to be affected in his ability to adjust to other work, but persons age 45-49 are more limited in their ability to adjust than persons under age 45 in some circumstances. **20 C.F.R. § 404.1563(c)**.

The Commissioner applies the applicable age category to the claimant during the period that he must decide whether the claimant is disabled. **20 C.F.R. § 404.1563(b)**. However, the age category is not applied mechanically in a borderline situation. **20 C.F.R. § 404.1563(b)**. When the claimant is within a few days to a few months of reaching an older age category and using the older age category would result in a disability determination, then the Commissioner should consider whether to use the older age category after evaluating the overall impact of all the factors. **20 C.F.R. § 404.1563(b)**.

To interpret the regulations for its ALJs, the Social Security Administration produced a guidance document called the *Hearings, Appeals, and Litigation Law Manual* (HALLEX). *See*

*Perkins v. Chater,* 107 F.3d 1290, 1294 (7th Cir. 1997) (noting that the courts have considered the HALLEX as indicative of how the Social Security Administration instructs its ALJs to adjudicate these matters). Specifically, HALLEX has indicated that the ALJs should "take a 'sliding scale' approach [where] the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." HALLEX II-5-3-2, available at http://www.socialsecurity.gov/OP_Home/hallex/II-05/II-5-3-2.html. HALLEX II-5-3-2 also describes certain examples of "additional vocational adversities," including:

> presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry.)

"[C]ourts have held that there is no bright line rule for what constitutes a borderline situation." *Holland v. Comm'r of Soc. Sec.*, 2012 WL 11052, at *1 n.1 (W.D. Pa. Jan. 3, 2012); *see Phillips v. Astrue*, 671 F.3d 699, 703 (8th Cir. 2012) (declining to draw a bright line rule for a borderline situation). Some courts have concluded that a borderline situation exists when the claimant is within six months of the next age category. *See Lewis v. Comm'r of Soc. Sec.*, 666 F. Supp. 2d 730, 738 (E.D. Mich. 2009) ("Generally, courts hold that a person within six months of the next higher age category is considered 'borderline.'"); *Gallagher v. Astrue*, 2009 WL 929923, at *6 (D.N.H. April 3, 2009) ("Although the courts have varied in their interpretation of in what period of time the borderline range falls, the general consensus is that the borderline range falls somewhere around six months from the older age category."). However, other courts have concluded that a borderline situation did not exist when the claimant was four months from

12

the older age category. *See Woods v. Chater*, 1996 WL 570490, at *5 (N.D. Cal. Sept. 27, 1996) ("[F]our months does not appear to be in the borderline under the circumstances of this case.").

Additionally, there is no bright line rule for whether the Commissioner must make a specific finding in borderline situations. *See Phillips*, 671 F.3d at 704–07 (comparing the requirements for different circuits); *Anderson v. Astrue*, 2011 WL 2416265, at *11 (N.D. Ill. 2011) (discussing the divergent approaches). In 1985, the Third Circuit addressed this issue when it remanded because the ALJ failed to address 20 C.F.R. § 404.1563(a). *Kane v. Heckler*, 776 F.2d 1130, 1134 (3d Cir. 1985) (declining to specify what findings are required). Similarly, the Tenth Circuit remanded when an ALJ failed to consider a borderline situation. *Daniels v. Apfel*, 154 F.3d 1129, 1135 (10th Cir. 1998).

The Sixth Circuit concluded that the ALJ is not obligated to discuss a claimant's borderline age situation in his opinion because the regulations only require the Commissioner to consider a different age category in borderline situations. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). However, the Sixth Circuit indicated that ALJs must provide sufficient explanation of their disability determination to assure reviewers that the decision was supported by substantial evidence and that the failure to provide an explanation could render the decision not supported by substantial evidence. *Bowie*, 539 F.3d at 400–01. The Ninth Circuit found that an ALJ satisfied the requirement to consider the older age categories when the ALJ mentioned the claimant's date of birth, age category, and cited 20 C.F.R. § 404.1563. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071–72 (9th Cir. 2010).

The Seventh Circuit has not addressed this issue, but courts within the Seventh Circuit have agreed with the Third and Tenth Circuits' approach. *See Figueroa v. Astrue*, 848 F. Supp. 2d 894, 902 (N.D. Ill. 2012) (remanding when the claimant was within three months of the next

13

age bracket and the ALJ failed to discuss whether to place the claimant in the next bracket); *Anderson*, 2011 WL 2416265, at *11 (remanding and adopting the Tenth Circuit approach that requires the ALJ to provide some explanation regarding § 404.1563(b)); **Young v. Barnhart**, 287 F. Supp. 2d 905, 913 (N.D. Ill. 2003) (remanding when the claimant was four and a half months shy of the next age category).

The ALJ indicated that Pittenger was born on February 12, 1964, was 49 years old on the date last insured, and fell in the "younger individual" category (20 C.F.R. 404.1563). Pittenger has argued that he was less than four and a half months from his 50th birthday, and therefore would be in the "person closely approaching advanced age category." Pittenger contends that if he had been in the "person closely approaching advanced age category" he would have been found disabled according to Medical-Vocational Guideline 201.14. The Commissioner has not disputed that contention. The ALJ indicated that he "considered whether the facts of this case justified applying the age categories non-mechanically, but there were not additional vocational adversities in this case there were not fully considered by the medical-vocational rules." (Tr. 31). The Commissioner contends that the instant matter is devoid of additional vocational adversities. Therefore, absent evidence of vocational adversities the Commissioner has argued that the ALJ properly applied Pittenger's chronological age at the time of his date last insured.

An examination of the case law of other district courts within the Seventh Circuit shows that the courts have required ALJs to consider and *explain* their age category determinations in borderline age situations. **Anderson v. Astrue,** 2011 WL 2416265, at *11 (N.D. Ill. 2011). Moreover, the Seventh Circuit has long required that, in every case, an ALJ build a "logical bridge" between the evidence and his conclusion to allow a court to trace the path of an ALJ's reasoning. **Sarchet v. Chater**, 78 F.3d 305, 307 (7th Cir. 1996). An ALJ must supply enough

detail and clarity to permit meaningful review.  *Arnett v. Astrue***,** 676 F.3d 586, 592 (7th Cir. 2012); *see* *McKay v. Colvin,* 2016 WL 6432582, at *5 (N.D. Ill. 2016).  The court's review is limited to determine whether the Commissioner's decision is supported by substantial evidence.  **42 U.S.C. § 405(g).**  Therefore, the ALJ's bare assertion that he applied the age categories mechanically because there were no additional vocational adversities is inadequate. Accordingly, the ALJ should have articulated what evidence he considered in assessing the additional vocational adversities.  The court does not know from the ALJ's decision what a vocational adversity might be or whether the ALJ considered any.  However, the court is not determining that the ALJ's finding was wrong, just requiring more explanation to permit a meaningful review.  On remand, the ALJ is directed to analyze the borderline age issue and explain in the ruling what evidence was considered in making the age category decision.

Pittenger has requested that the court remand for an award of benefits.  An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits."  *Allord v. Astrue***,** 631 F.3d 411, 415 (7th Cir. 2011).  The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits.  *Briscoe v. Barnhart***,** 425 F.3d 345, 355 (7th Cir. 2005).  The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 23rd day of August, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge